UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNE HASCHAK, JASON STEINLAUF and NICOLE ADAMS, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>FOX & HOUND RESTAURANT GROUP, and CHAMPPS OPERATING CORPORATION, d/b/a CHAMPPS AMERICANA,<br><br>Defendants. | No. 10 C 8023<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Named plaintiffs Brianne Haschak, Jason Steinlauf and Nicole Adams have brought a class action complaint against defendants Fox & Hound Restaurant Group and Champps Operating Corporation, alleging violations of the Illinois Minimum Wage Law ("IMWL") and the Fair Labor Standards Act ("FLSA"). Both counts are premised on the allegation that Defendants have maintained a policy under which employees are paid a sub-minimum, "tipped" wage for time spent performing "untipped" duties that are unrelated to their "tipped occupation."
With respect to the IMWL claim, Plaintiffs have moved under Fed.R.Civ.P 23(b)(3) to certify a class defined as:

> All persons employed in Illinois by Champps Operating Corporation, doing business as Champps Americana, from December 17, 2007, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation, for which they were not paid minimum wage.

With respect to the FLSA claim, Plaintiffs have moved under 29 U.S.C. § 216(b) to authorize notice of a collective action to potential class members. Defendants oppose both motions. For the reasons that follow, Plaintiffs' motions are granted.

1

## BACKGROUND

Defendants own and operate over 40 restaurants in fifteen states. Five of these restaurants are located in Illinois. The named plaintiffs all worked at one of the five, located in Lincolnshire, as bartenders and/or wait staff. As "tipped employees," the named plaintiffs and other putative class members were, on the face of it, legally paid a wage below the legal minimum. A tipped employee is one who is engaged in an occupation in which he or she regularly and customarily receives more than $30 per month in tips. 29 U.S.C. § 203(t). Because of this additional source of income, Illinois law permits employers to pay employees engaged in such occupations at a rate as low as sixty percent of the required minimum wage. *See* 820 ILCS 105/4(c); *see also* 29 U.S.C. § 203(m).

Crucially, however, this exemption from the minimum wage requirement is only properly applied to time spent doing work for which the employee customarily receives tips. Time spent performing other required duties that are not "related" to the tipped occupation must be compensated at no less than the minimum wage. *See* 29 C.F.R. § 531.56(e).

Plaintiffs assert that Defendants maintain a policy at the corporate level wherein employees are regularly and formally required to perform tasks unrelated to their tipped occupation. Referred to as "sidework" by Defendants, Plaintiffs contend that Defendants' practice of compensating their employees at a sub-minimum, tipped wage rate for this sidework is in violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs seek, *inter alia*, payment of unpaid minimum wages and punitive damages.

## DISCUSSION

I. Class Certification

Class action suits are governed by Fed.R.Civ.P. 23, and the Rule's familiar two-step analysis is required to determine if class certification is appropriate. First, the proposed class must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

representation. Second, the proposed class must also satisfy at least one of the requirements listed under Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), which the Seventh Circuit has described as requiring "a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

While subsequent factual testing under Rule 56 or at trial permits a court simply to accept a complaint's allegations for purposes of ruling, for example, on a 12(b)(6) motion, "an order certifying a class usually is [a court's] last word on the subject." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Consequently, a court must make *all* legal and factual inquiries that are necessary under Rule 23 at the class certification stage. This may require "touching aspects of the merits" and "prob[ing] behind the pleadings." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Szabo*, 249 F.3d at 676-77).

A. Rule 23(a)

Defendants do not contest that the putative class satisfies the requirements of Rule 23(a), apparently reserving their argument to dispute whether Rule 23(b)(3) is satisfied. I will nevertheless consider each of the Rule 23(a) requirements in turn.

1. Numerosity

Rule 23(a)(1) requires a plaintiff to demonstrate that the members of the prospective class are so numerous as to make joinder impracticable. "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D.Ill. 2002) (internal citations omitted).

Plaintiffs and Defendants agree that at least 373 individuals worked for Defendants as wait staff or bartenders during the relevant period. I find, and Defendants do not contest, that such a putative class is sufficiently numerous that joinder of all members of the class would be

3

impracticable.

### 2. Commonality

Rule 23(a)(2) requires the presence of "questions of law or fact common to the class." "That language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'" *Wal-Mart*, 131 S.Ct. at 2551. Essential to satisfying Rule 23(a)(2) is that the "claims must depend upon a common contention." *Id*. And this common contention "must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Conceptually, there is a gap between an employee's claim that he or she has been improperly paid a sub-minimum, "tipped" wage for "untipped" labor on the one hand, and the existence of a class of persons who have suffered the same injury, such that the employee's claim and the class claim will share common questions of law or fact. *Cf. Wal-Mart*, 131 S.Ct at 2553 (citing *Falcon*, 457 U.S. at 157-58). Here, Plaintiffs have bridged this gap by demonstrating that Defendants maintained a company-wide policy requiring its employees to perform "sidework" on a regular basis. Plaintiffs contend that while performing these duties, Defendants' employees are engaged in an "untipped" occupation and are thus entitled to be compensated at no less than the minimum wage. Commonality is thus satisfied by Plaintiffs' claim, which presents the common question of whether, as a matter of law, Defendants' employees remain "engaged" in a "tipped" occupation, despite being required to perform sidework. *See* 29 U.S.C. § 203(t); C.F.R. § 531.56(e); 29 C.F.R. § 541.2. Again, Defendants do not contest Plaintiffs' claim that Rule 23(a)(2) is satisfied.

### 3. Typicality

Typicality under Rule 23(a)(3) is satisfied if a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Because commonality and

typicality are closely related, a finding of one often results in a finding of the other. *De La Fuente*, 713 F.2d at 232. I find, and Defendants do not contest, that the claims of the named plaintiffs and class members here both arise out of the same conduct by Defendants and are based on the same legal theory. Rule 23(a)(3) is thus satisfied.

    4. Adequacy

To be an adequate class representative under Rule 23(a)(4), a plaintiff must have a "sufficient interest in the outcome to ensure vigorous advocacy." *Chapman v. Worldwide Asset Management, L.L.C.*, 2005 WL 2171168, *4 (N.D.Ill. Aug. 30, 2005). Further, the class representative cannot have "antagonistic or conflicting claims with other members of the class." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiffs assert that the putative class representatives have no antagonistic claims with the other members of the class, and I have no reason to doubt the sufficiency of the class representatives' interest in the outcome of this dispute. I find, and Defendants do not contest, that Rule23(a)(4) is satisfied as to the named plaintiffs.

Rule 23(a)(4) also requires that class counsel adequately represent the interests of the class as a whole. I have no reason to doubt class counsel's competency, nor their ability to "fairly and adequately represent the interests of the class." I find, and again Defendants do not contest, that Rule23(a)(4) is satisfied as to class counsel.

    B. Rule 23(b)(3) – Predominance and Superiority

Rule 23(b)(3) is satisfied where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Defendants raise no challenge regarding the superiority component of Rule 23(b)(3), and given the logistical difficulties and inefficiencies that would attend bringing each one of these claims individually, I find that the putative class satisfies it.

Defendants do argue, however, that the predominance component is not satisfied. I disagree.

The predominating question raised by Plaintiffs' claim is whether Defendants' company-wide policy requiring employees to perform "sidework" is tantamount to requiring them to engage in an "untipped" occupation for a sub-minimum, "tipped" wage. This question can be resolved on a class-wide basis. *Cf. Hawkins v. Securitas Sec. Services USA, Inc.*, 280 F.R.D. 388, 396-97 (N.D.Ill. 2011) (predominating questions were whether plaintiffs were required to perform the challenged duties and whether time spent performing those duties was compensable under the IMWL).

Defendants point to individual differences that exist with respect to which employees perform which tasks and with what degree of frequency, and assert that these individual questions will predominate over the broader question described above. For example, Defendants note that "[s]ervers who don't open or close will not perform the side work tasks unique to those positions and the decisions regarding who is scheduled to open or close are at the discretion of each restaurant's management and will be influenced by each server's availability and experience."

The principal issue as to liability under Plaintiffs' claim, however, is not manifest in individual discretionary decisions made by managers as to which employees should perform which tasks. The principal issue is a company-wide policy mandating performance of those tasks, and whether compensation for such performance requires at least the minimum wage. If Defendants could colorably assert that the decision to require sidework to be performed was made, in the first instance, only at the managerial level by hundreds of managers acting on an individualized, discretionary basis, their argument would have more purchase. *Cf. Wal-Mart*, 131 S.Ct. at 2554-57. Here, however, a company-wide policy and its consistency with the law *vel non* creates a common question that predominates over the individual questions to which Defendants point.

Defendants' argument that their anticipated *de minimis* defense precludes class certification also fails. Defendants point to *Hawkins v. Securitas*, 280 F.R.D. at 400, where the Court found that one of the plaintiff's claims could not be resolved on a class-wide basis in part because the applicability of the *de minimis* defense to that claim could not be resolved on a class-wide basis.

6

That is not so here, however, where *Hawkins* is ultimately inapposite. The relevant claim in *Hawkins* alleged that employees were not being paid for time spent performing duties that required the employees to arrive at work prior to the start of their shifts and stay at work after the end of their shifts. *Id*. at 398. There was no company-wide policy, however, setting forth any common understanding of such an expectation. *Id*. at 398-99. Without a general policy to bridge the "conceptual gap" between a single employee's claim that he had been injured and the existence of an entire class of employees who had suffered the same injury, the Court was left with no more than a collection of individual claims, the liability for any one of which turned on whether the time spent on the required work was *de minimis*. *See id*. at 398-400; *cf. Wal-Mart*, 131 S.Ct. at 2552-53.

Here, by contrast, where the claim alleges an improper company-wide policy, the applicability of the defense as to any single class member will not be dispositive of liability on the claim as a whole. If Plaintiffs prevail, it will be because Defendants' policy is found to be improper. And Defendants' liability for the *policy* will be independent of the possibility that certain individual class members will be unable to recover because the time they spent performing tasks mandated by the otherwise improper policy may happen to prove *de minimis*.

    C. Class Definition

Plaintiffs agree in their reply brief to expressly limit the class to Defendants' Illinois employees. In addition, Plaintiffs raise no objection to Defendants' assertion that referring to the class members as "tipped employees" is too broad and that they would be more appropriately referred to as "servers and bartenders." Accordingly, the certified class is defined as follows:

> All persons employed in Illinois by Champps Operating Corporation, doing business as Champps Americana, from December 17, 2007, to the conclusion of this action, who worked as servers and/or bartenders earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation, for which they were not paid minimum wage.

II. FLSA

Finally, Plaintiffs also have asserted that Defendants' policy is in violation of the Fair Labor

Standards Act, 29 U.S.C. § 216(b), and move the court for authorization to send notice to potential collective action members under § 16(b) of the Act.

District courts have discretion in managing collective actions under the Act because, while § 216(b) expressly provides for collective actions brought by employees against their employers, the Act does not detail specific procedures for the certification and notice process. *See Betancourt v. Maxim Healthcare Services, Inc.*, 2011 WL 1548964 *4 (N.D.Ill. April 21, 2011). Most courts in this district have adopted a two-step process for determining whether a FLSA suit should proceed as a collective action. *Id.*; *Jirak v. Abbot Laboratories, Inc.*, 566 F.Supp.2d 845, 847 (N.D.Ill. 2008).

Here, we are in the first stage, where a court may grant "conditional certification" of the collective action and thereby authorize notice to other potential class members. The plaintiff must make a "modest factual showing sufficient to demonstrate that [the plaintiff] and potential class members were victims of a common policy or plan that violated the law." *Betancourt*, 2011 WL 1548964 at *4 (and cases cited therein). Any potential class members must be "similarly situated," though the standard is employed leniently at this stage. *Id*.

Courts in this district have found that the costs of underinclusiveness outweigh the costs of overinclusiveness in this context, and the light burden placed on plaintiffs is thus appropriate. *See id*. at 4-5 (and cases cited therein). Defendants have an opportunity to challenge certification in the second stage, whereas stopping a case from proceeding as a collective action in the first stage risks prematurely denying some plaintiffs the opportunity to bring their claims entirely due to the realities of high litigation costs. *See id*. (noting that courts have means other than denying conditional certification to monitor litigation and ensure that it is not unnecessarily prolonged).

Plaintiffs have made the required modest factual showing that they and the identified potential class members are similarly situated and were injured by a common policy that violated the law. As with the Rule 23 class definition described above, Defendants assert that the conditional certification of a class defined as "tipped employees" is too broad, and should be narrowed to include

only "servers and bartenders." Plaintiffs again raise no objection, and the notice will reflect this change.

Next, the parties disagree as to whether the proper limitations period under the Act is two or three years. Generally, the statute of limitations for these actions is two years; if the action arises out of a willful violation, the limitations period is extended to three years. 29 U.S.C. § 255(a). Plaintiffs have offered little beyond the naked assertion that Defendants have acted willfully, essentially asserting that the rules alleged to have been violated have been in place for a long time and are sufficiently well-known that Defendants' violation of the rules must have been at least reckless. I certainly would have appreciated more detail, but the allegation is subject to Rule 11, and if true, would permit the conclusion that Defendants acted willfully. *Cf. Kelly v. Bank of America*, 2011 WL 4526674 *1 (N.D.Ill. Aug. 30, 2011). The question of willfulness will ultimately be tested by a trier of fact before any liability is found, and the scope of the class can be amended if appropriate. For purposes of conditional certification, however, the limitations period will be three years.

Defendants also assert that, in the context of collective actions under FLSA, opt-in claims do not relate back to the filing of the complaint. *See Babych v. Psychiatric Solutions, Inc.*, 2011 WL 5507374 *9 (N.D.Ill. Nov. 9, 2011). FLSA requires employees that wish to become parties to a collective action brought under the Act to file a written consent to become such a party with the court. 29 U.S.C. § 216(b). The Act is clear that, with respect to individual claimants not specifically named as parties in the complaint, the action "shall be considered to be commenced on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256. Accordingly, any individuals not employed by Defendants within three years of filing consent to join as parties will be time barred from this action.[1] *See* 29 U.S.C. §

---

[1] I pause here to note that this will create two different limitation periods for this dispute, as the period for the Rule 23 claim will remain three years from the filing of the complaint. While somewhat sub-optimal from a logistical perspective, such an outcome should not be surprising given the differing extent to which Rule 23 and collective actions under FLSA accommodate potential class members. *See generally Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 976-79 (7th Cir. 2011) (noting Rule 23's opt-out requirement as compared to FLSA's opt-in requirement and the corresponding implications for potential class members, but concluding that a combined action does not, as a matter of law, frustrate the

9

255(a). Plaintiffs raise no objection here, and the temporal scope of the conditional class will thus be defined as three years from the date notice is sent, as opposed to three years from the date of the complaint.

Finally, Defendants raise numerous objections to the language of the draft notice submitted by Plaintiffs and suggest that I direct counsel from both parties to confer and submit to the Court a joint proposed notice for potential class members. Plaintiffs again raise no objection, and I hereby direct the parties to submit such notice to the Court. The joint proposed notice shall be sent to chambers on or before November 19, 2012. If there are unresolved disagreements on a few aspects of the jointly submitted notice, each side will submit its own version (along with an explanation) and I will approve one of the two or, if necessary, prepare my own version.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motions for class certification and for authorization to notify potential class members of the FLSA collective action are granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 14, 2012

---

intent of either statute).